## THE ELLA B.[1]

### AUSTIN and others *v.* THE ELLA B.

*(District Court, N. D. New York.* January 16, 1886.)

MARITIME LIEN—HOME PORT—SUPPLIES FURNISHED VESSELS NAVIGATING CA-
NALS—WESTERN AND NORTH-WESTERN LAKES—NEW YORK STATUTE CON-
STRUED.

> If supplies are furnished in the home port, the duration and requisites of
> the lien depend upon the terms of the state statute. If the vessel be en-
> gaged in canal navigation, the specification of the debt must be filed in the
> office of the canal department; or if in lake navigation, her employment
> therein must be shown. The burden of proof is on the libelant. An occa-
> sional venture on a lake does not make the vessel a lake boat, if her size,
> equipment, and other circumstances indicate that such is not her usual em-
> ployment.

In Admiralty.

*George S. Potter*, for libelants.

*Joseph V. Seaver*, for respondent.

COXE, J. The libelants bring this action to recover for supplies
furnished to the steam-tug Ella B., in her home port, during April
and May, 1884, the statutes of New York providing for a lien in such
cases. Specifications of the debt were filed in the Erie county clerk's
office, February 2, 1885, upon the supposition that the tug was a ves-
sel "navigating the western and north-western lakes," or one of them,
pursuant to the provisions of the laws of New York for 1862 as amended
in 1863. 3 Rev. St. N. Y. (7th Ed.) 2404, 2405, 2410.

It is admitted that the libelants cannot succeed, unless their pro-
ceedings can be sustained under the extended limitation provided by
the amendment of 1863. If the Ella B. was not a vessel navigating
the lakes, the libelants' debt ceased to be a lien at the expiration of
six months after it was contracted, namely, in November, 1884. It
is therefore incumbent upon the libelants to satisfy the court that the
Ella B. was a vessel navigating Lake Erie. It seemed to be the theory
of the respondent, upon the argument, that she was called upon to
prove affirmatively that the tug was "used or fitted for the navigation
of the canals," requiring the specifications of the debt to be filed with
the canal department at Albany. This is not necessary. It is enough
if the libelants fail to prove that she was a lake vessel.

The Ella B. is a tug of less than five tons burden. She is 35 feet
in length and 10 8-10 feet beam. She is not provided with an anchor,
compass, cooking apparatus, cabin or sleeping accommodations. Her
bunkers hold but two or three tons of coal, The principal theater of
her operations has been Buffalo creek and harbor, and the waters adja-
cent thereto. She has occasionally been out upon Lake Erie and the
Niagara river, but never for more than a few hours at a time. She

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

has also navigated the canals in the vicinity of Buffalo as far as Tonawanda and Lockport. Since 1882 she has not been enrolled. 24 Fed. Rep. 508. She is emphatically a harbor tug, towing and shifting canal-boats and other vessels about the still waters of the harbor, but is entirely unfitted, by reason of her size, construction, outfit and limited capacity, to navigate the stormy waters of the lakes. As well might it be argued that a tug navigating New York harbor is an ocean-going vessel, because occasionally, in fair weather, she goes out beyond Sandy Hook.

It is thought that the law-makers in passing the amendment of 1863, relating to vessels navigating the western and north-western lakes, did not have in mind, or intend to provide for, a tug so diminutive in size that almost certain disaster would await her if she ventured beyond the Buffalo breakwater in stormy weather,—a tug without any of the tackle or appliances necessary for an extended trip upon the lakes,—a tug, in short, hardly less fitted to navigate the Atlantic ocean than Lake Erie.

The specific language of the statute, as well as the object which the legislature intended to accomplish, precludes the idea that it was ever intended to include such a vessel within its terms. But if the court should be inclined to adopt the view that because the tug had occasionally been out upon the waters of Lake Erie she was therefore a lake boat, it would not aid the libelants, for the respondent has introduced similar, and perhaps more satisfactory, proof, and has made use of similar arguments to prove that she was intended for the canals. If she was a vessel "built, used, or fitted for the navigation of the canals," it was necessary also to file the specifications of the debt in the office of the canal department at Albany, pursuant to the amendment of 1879. 3 Rev. St. N. Y. (7th Ed.) 2405. This the libelants have not done. It is entirely obvious that if the few occasions when she ventured upon Lake Erie at its extreme easterly end would justify the court in finding that she was a vessel navigating one of the north-western lakes, the larger number of occasions when she is proved to have been upon the Erie canal would require a finding also that she was "used or fitted" for canal navigation. There is no theory upon which the libelants can recover. The libel must therefore be dismissed, with costs.

The foregoing views compel the dismissal, with costs, of the libels filed by Mary A. Weller and James C. Austin.

In the case of David Bell the work was done and the materials furnished in April and May, 1885. The libel was filed in June of the same year. The libelant is therefore entitled to a decree for the amount demanded, with interest and costs, within the doctrine of *The Julia L. Sherwood,* 14 Fed. Rep. 590. The tug did not "leave the port at which such debt was contracted," within the meaning of the second section of the law.