## KRETZMER *v.* THE WILLIAM A. LEVERING.

*(District Court, D. New Jersey. June 11, 1888.)*

1. MARITIME LIENS—SUPPLIES FURNISHED COOK—STATE STATUTE.

    Where a cook on a tug is paid a certain sum per month, and in addition weekly "grub money," under an agreement with the captain to board the crew, and is not directed by the captain as to where to make his purchases, nor to do so on the credit of the tug, one who sells him provisions has no lien on the tug under the general maritime law, or under Statute N. J. 1884. (Supp. Rev. 427,) providing that a debt for supplies furnished within the state for the use of the ship, and contracted by the captain, owner, or consignee, shall be a lien on the ship.

2. SAME—BURDEN OF PROOF.

    Where the statute provides for a lien on certain conditions, the burden of proof is on the libelant to show that those conditions have been fulfilled, the presumptions being all the other way. *The Chelmsford,* 34 Fed. Rep. 399.

3. SAME—EVIDENCE—ADMISSIONS OF COOK—BOOKS OF LIBELANT.
    The admissions of the cook that he owes a balance for provisions furnished
    the crew, and the fact that they were charged on libelant's book to the tug,
    do not dispense with the necessity of proving that he had a right so to charge
    them.

In Admiralty. Libel for supplies.
Meinhard Kretzmer filed a libel against the tug William A. Levering
for supplies furnished.
  *Bedle, Muirhead & McGee*, for libelant.
  *John Griffin*, for respondent.

WALES, J. This is a suit to recover a small bill for provisions alleged
to have been furnished to and on the credit of the tug William A. Lev-
ering, at Jersey City, where the libelant carried on his business, and
which was also the home port of the tug.    The statutes of New Jersey of
1884, (Supp. Rev. 427,) which is a supplement to the act of 1857, pro-
vides "that whenever a debt shall be contracted by the master, owner,
agent, or consignee of any ship or vessel  *   *   *   for such supplies,
provisions, and stores, furnished within this state for the use of such
ship or vessel at the time when the same were furnished,   *   *   *
such debt shall be a lien upon such ship," etc.   A lien of this descrip-
tion is enforceable in admiralty, although without the statute it would
not be recognized under the general maritime law of the United States.
*The General Smith*, 4 Wheat. 443; *The Lottawanna*, 21 Wall. 558.   But
such a lien will be enforced in this court only when it comes strictly
within the terms of the statute.   *The Red Wing*, 14 Fed. Rep. 869; *The
Marcelia Ann*, 34 Fed. Rep. 142.   The first and only question then, is,
has the libelant brought his case fairly within the terms of the statute?
    A careful examination of the record, which is inexcusably bulky, and
full of irrelevant testimony, has not brought to light any proof that the
master, owner, agent, or consignee of the tug contracted at any time, di-
rectly or indirectly, with the libelant to furnish the supplies sued for.
The master employed a cook by the month, and, in addition to his wages,
paid him $17.50 every week, in advance, for "grub money."   The cook
had an agreement with the master to board the crew for that sum, and
he dealt with the libelant, from the beginning of April to the 3d or 4th
of August, 1886, paying, for the most part, in cash for what he bought,
and there is not the slightest evidence that he was directed by the master,
or by any other person, to buy provisions at any particular place, or on
the credit of the boat.   In this matter he acted independently of the mas-
ter, and was at liberty to buy where and of whom he pleased.   The master
was ignorant of the dealings of the cook with the libelant until late in
the summer, when the crew complained of bad meat.   For the libelant
it is contended that the presumption that the supplies furnished to a
vessel in a foreign port are furnished on the credit of the vessel applies
to the present case, and that his lien is not waived unless there is satis-
factory proof that the provisions were sold on the personal credit of the
cook.   But there is nothing in the statute which warrants this construc-

tion of its meaning, nor is there any rule of law, or any known authority, which sustains it. The statute requires proof of a contract by one of the persons named in it, and does not establish a lien on mere proof that the supplies were taken on board of and used by the boat. *The Chelmsford*, 34 Fed. Rep. 399. Prior to the passage of the statute, no lien existed in New Jersey for supplies to a domestic vessel. The statute confers a lien on certain conditions, and it is only when these conditions have been performed that the lien attaches. The statute does not create a maritime lien, and there can be no presumptions in favor of the specific lien which is conditionally given to the material-man. The presumptions are all the other way, and the burden is on the libelant to prove that a contract was made with him by one of the persons described in the statute. Contracts made by such persons, and by no others, for supplies, provisions and stores, will bind the vessel. The admission of the cook that he personally owes the libelant a small balance for meat and groceries with which he fed the crew does not affect the question; nor does the fact that libelant headed his account with the words "Charged to the W. A. Levering," dispense with the necessity of proving that he was legally authorized to make such a charge. Besides this, the libelant's "books" are open to serious objections from the manner in which they appear to have been kept and made up. There is reason to believe—at least to suspect—that the entries in each book were all made at one time, with the same pen and ink, and by the same writer. The books are neat and unsoiled, bear no marks of having been in daily use, and contain no other accounts than those against the tug. Let a decree be entered dismissing the libel, with costs.