## THE ALLIANCA.

### THE SEGURANCA.

### THE ADVANCE.

LONDON ASSUR. CO. v. PROCEEDS OF THE ALLIANCA. BROWN et al. v. PROCEEDS OF THE SEGURANCA. HARD et al. v. PROCEEDS OF THE ADVANCE.

(District Court, S. D. New York. January 10, 1895.)

SURPLUS MONEYS—MORTGAGEE—NONLIEN CLAIMS DISALLOWED.

Claims for insurance premiums and for moneys advanced to disburse ships in a foreign port, and to keep the vessels of the line running, in so far as they are not maritime liens, cannot be paid out of surplus moneys in the registry arising from a sale of the vessels, in priority to the claims of a mortgagee of the vessels, (1) because such claims are neither legal nor equitable liens upon the vessels or their proceeds; (2) the allowance of certain unsecured labor and supply claims in priority to the mortgagee's claims, in cases of railway receiverships, are not analogous or applicable; petitions for the payment of such claims were accordingly dismissed.

In Admiralty. Claims on surplus moneys.

Cary & Whitridge and W. Parker Butler, for petitioners.

Carter & Ledyard and Mr. Baylies, for Atlantic Ins. Co., mortgagee, respondent.

BROWN, District Judge. The steamships Allianca, Seguranca and Advance having been sold under process, and the proceeds paid into court, as stated in the previous cases of The Allianca and The Seguranca, 63 Fed. 726; The Vigilancia, Id. 733; and the questions concerning maritime liens thereon having been adjudged in the cases above named, and in the cases of Freights of The Kate, Id. 707, and Hard v. The Advance, Id. 142, petitions have now been filed in behalf of Brown Bros. and of Hard & Rand, based upon the same claims, alleging an equitable lien, or right of priority, as against the mortgagee of the vessels, and asking the court to award payment of these claims out of the surplus moneys, in preference to the mortgage, upon the same principles upon which a receiver in railroad cases has been ordered to pay certain wages and supply debts, or other charges constituting a part of the current expenses necessary to maintain the operation of the road, either during the receivership, or for a limited period prior to the receiver's appointment. The claims here in question were undoubtedly for the operating expenses of the different vessels, and to disburse the ships at different ports in Brazil, as stated in the decisions above referred to.

The claim of the London Assurance Company is for a balance of $470.85 premiums of insurance, due upon its policy upon the Advance, issued to the United States & Brazil Mail Steamship as owner, on account of whom it may concern, and inuring to the benefit of the Atlantic Trust Company, mortgagee, under the terms of its mortgage. The premium was for insurance for a period of between five

and six months prior to the 11th day of March, 1893, when the policy was canceled, a few days after the appointment by the state court of a receiver of the steamship company.

The payment of these claims out of the surplus is opposed by the mortgagee of the vessels, on the ground that none of the claims are either legal or equitable liens upon the surplus moneys in the registry of the court.

Upon several grounds the above claims must be disallowed. In the first place, it is well settled that in the distribution of surplus moneys, this court can only take cognizance of liens upon the fund; that is, some vested legal or equitable interest in the res from which the fund was derived, as distinct from the claims of general creditors. The Advance, 63 Fed. 704, and cases there cited. The court, therefore, though in possession of the fund, is not in the situation of a receiver on behalf of creditors at large, and in that respect the situation differs from that in many of the railroad cases cited.

2. It is quite clear that none of the claims above stated were ever either legal or equitable liens upon the vessels that have been sold; or at least not such liens as have been ordinarily recognized either in law or in equity.

3. The only ground upon which any priority of right over the mortgage can be claimed, analogous to an equitable lien, is the asserted similarity of the present cases to those of railway receiverships, in which it may, perhaps, be said, that a new order of equitable liens has been recognized and sanctioned by the decisions of the supreme court. Fosdick v. Schall, 99 U. S. 235, 252; Hale v. Frost, Id. 389; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675.

This class of cases, however, is acknowledged to be exceptional; and I have not been referred to any cases in which the same doctrine has been applied, except to those of railways, in which the quasi public function of the road, the peculiar relation of one railway to another, and the necessity of maintaining the road as a going concern, in the interest of the mortgagee, as well as of the public, and the understanding that current supplies are to be paid for out of current earnings, are all recognized. The underlying principle of those cases seems to be that the current receipts are understood by the mortgagee and by all other parties interested to be the fund for the payment of the current debts of supply and labor; and consequently that when a mortgagee, after default, has suffered such debts to be incurred upon that understanding, a receiver appointed at his instance should not be allowed to take possession of that fund, and divert those receipts, for the mortgagee's benefit, from the payment of those debts to which they have been understood to be devoted, and to which they should equitably be applied; and that if such a diversion has taken place, restoration by the mortgagee's receiver may be justly decreed to that extent, even out of the corpus of the property itself; but that when there is no such diversion, there is no such remedy. This is substantially the language of Chief Justice Waite in Fosdick v. Schall, 99 U. S. 235, 252–254, and in Burnham

v. Bowen, 111 U. S. 776, 782, 4 Sup. Ct. 675. The same principle was still further applied and elucidated in the opinions of the chief justice in Morgan's L. & T. Railroad & Steamship Co. v. Texas Cent. Railway Co., 137 U. S. 171, 196, 197, 11 Sup. Ct. 61; of Mr. Justice Brewer in Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; and of Mr. Justice Shiras in Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824.

In the present case no current receipts, which might have been applied to the petitioners' claims, have been diverted from the payment of current debts, not even by the owner company, so far as the proof shows; certainly not by any act or privity of the mortgagee. On the contrary, in the litigation between the mortgagee and other lien claimants, the freights, or current receipts, of the various steamships have all been ordered by this court to be applied to certain current debts, to the complete exclusion of the mortgagee. Freights of The Kate, 63 Fed. 707, 716.

4. The petitions do, indeed, allege a diversion of funds by the steamship company from the payment of operating expenses at different times during 1892, "for the benefit of the mortgage creditors, by purchasing additional equipment covered by the mortgage, such as steam tugs, and lighters; and by making permanent improvements and repairs upon the steamers covered by the mortgage"; but it is not alleged that any such diversion took place since the claims here presented arose; and upon the argument of the case, in answer to inquiries by the court, it was admitted by counsel that no such diversion since that time was expected to be proved.

Even in the case of Burnham v. Bowen, supra, upon which the counsel for the petitioners principally relies, it was stated by Chief Justice Waite "that the payment [of the debt to which preference was given] would have been made [by the company] at the time agreed on, if the company had remained in possession" (111 U. S. 778, 4 Sup. Ct. 675); that "there is nothing to indicate that this debt would not have been paid at maturity from the earnings, if the court had not interfered at the instance of the trustees for the protection of the mortgage creditors" (page 781, 111 U. S., and page 675, 4 Sup. Ct.); and the preference was allowed, because the court took the earnings of the receivership and applied them to the payment of fixed charges on the railroad structures, thus increasing the security of the bondholders at the expense of the labor and supply creditors, constituting a diversion of the current debt fund.

Here the circumstances are wholly different. The mortgagee had no peculiar interest in the maintenance of the steamship company as a going concern, different from that of any other creditor in the prosperity of his debtor. The ships were not run for the mortgagee's benefit. While the mortgagee was out of possession, the freights belonged to the steamship company, and there has been no diversion of those freights since the claims in suit arose, to the benefit of the mortgagee. All the grounds for the exceptional allowance of a priority to certain unsecured claims in railway cases, seem to me here to fail. In the three cases of railway mortgages last cited in the supreme court a preference was denied, because of the absence

of any special circumstances justifying a preference; and because the claims were contracted upon the personal responsibility of the mortgagor company (136 U. S. 97, 98, 10 Sup. Ct. 950; 137 U. S. 198, 11 Sup. Ct. 61; 149 U. S. 112, 13 Sup. Ct. 824). It is the same as respects all these claims, except so far as the express written or oral hypothecations of the freights extend, to which hypothecations full effect, so far as legally possible, has been already given by this court in the decisions first above cited. The claim for insurance premiums evidently rested equally on a personal credit of the Brazil Company; otherwise a specification of such claim would have been filed to secure a lien under the state law. See The Alliance, 61 Fed. 507. I could not sustain this claim without practically reversing the rule of this country, that insurance premiums are no lien aside from the statute.

I have already held that there could be no subrogation; and as I cannot perceive any possible aspect in which an equitable lien upon the vessels, or priority over the mortgagee, can be maintained by the petitioners, I must sustain the exceptions and dismiss the petitions.