THE SEGURANCA.

THE ALLIANCA.

THE ADVANCE.

BROWN v. PROCEEDS OF THE SEGURANCA. LONDON ASSUR. CO. v. PROCEEDS OF THE ALLIANCA. BRITISH & FOREIGN MARINE INS. CO. v. SAME. HARD et al. v. PROCEEDS OF THE ADVANCE.

(District Court, S. D. New York. July 16, 1895.)

MARITIME LIENS — SURPLUS MONEYS — MORTGAGEE — BANKERS — INSURERS — AGENTS—EQUITABLE LIEN.

Where no maritime lien was acquired by bankers, insurers, or agents, no equitable lien arises in their favor upon the proceeds of a ship, as against the mortgagee, from the mere forbearance of the latter to press a default; nor from any false representations of the owner company, as respects its solvency to which the mortgagee was not privy; especially where there was no credit of the ship, nor any improvement of the ship, nor any increase of the mortgaged fund. The decisions in the cases of Freights of The Kate, 63 Fed. 707; The Advance, Id. 142; The Allianca, Id. 726; Id., 65 Fed. 245,—followed.

These were petitions filed by John Crosby Brown against the proceeds of the Seguranca; by the London Assurance Company and the British & Foreign Marine Insurance Company, respectively, against the proceeds of the Allianca; and by Hard & Rand against the proceeds of the Advance.

Cary & Whitridge and W. P. Butler, for J. C. Brown, London Assur. Co., and Hard & Rand.

Carter & Ledyard and E. L. Baylies, for mortgagee.

Butler, Stillman & Hubbard and W. Mynderse, for British & Foreign Marine Ins. Co.

BROWN, District Judge. I have given careful consideration to the petitions and amended petitions in the above cases, and to the elaborate briefs submitted in support of the petitioners' contention, that as against the mortgagee of the vessels, the petitioners, though having no maritime lien upon the vessels, or their proceeds, as I have heretofore held, have nevertheless such an equitable right of payment out of those proceeds as a court of equity would recognize and enforce as against the mortgagee. If I could find that upon the facts stated in the petition such a right would be recognized and enforced by bill in equity against the fund, if in the mortgagee's hands, I should not hesitate to give similar relief in this proceeding by ordering payment to the petitioners. For no such relief could be given by bill in equity, except upon the recognition and adjudication of an equitable lien in favor of the petitioners, as the necessary basis of such relief; and such an equitable lien as against the mortgagee, if it exists, is all that is needed to entitle the petitioners to relief in a proceeding in admiralty against the remnants and surplus.

For the reasons stated in previous decisions, I have held that the petitioners have no maritime lien upon these vessels or their proceeds, either by contract, by implication of law, or by subrogation. Hard v. The Advance, 63 Fed. 142; Freights of The Kate, Id. 707; The Allianca, Id. 726; The Vigilancia, Id. 733; The Allianca, 65 Fed. 245. To the express contract I have given the widest permissible construction and effect as against the freights in order to carry out what seemed to me to be the intention of the parties. If, under the express contract, and the facts and circumstances stated in the petitions, there was no maritime lien upon the vessels in favor of the petitioners, then there is nothing sufficient to uphold any direct equitable lien in their favor, at least as against the Brazil Mail Steamship Company, with which all these dealings were had. The same reasons that have prevented recognition of any maritime lien, would equally preclude any such equitable lien. These reasons have been stated in the previous decisions above cited; and though the same arguments as upon the former hearings have been here renewed, I need only say that my views in that regard are unchanged, and that if they are erroneous, the remedy is by appeal.

By the amendments to the petitions, however, it is sought to show some independent equitable right as against the mortgagee. I say

independent right, because it is manifest that if the mere dealings of the petitioners with the Brazil Mail Steamship Company did not of themselves create any maritime or equitable lien in the petitioners' favor, any equitable lien as against the mortgagee, if it exist at all, must arise out of some independent acts, circumstances or relations as between the petitioners and the mortgagee. The petitions, however, do not allege any direct dealing between the petitioners and the mortgagee.

The averment that the officers of the steamship company in procuring the letters of credit from Brown Bros. represented the company to be solvent, its vessels to be running full and making money, whereas the company was in truth insolvent, and losing money, would show no more than a right of action for deceit against the steamship company, or its officers, unless it were also shown that the representations were made with the mortgagee's privity, and for its benefit. Not only is there no such averment, but the proofs in other proceedings of the petitioners upon the same claims, show that these letters of credit were not designed for, and did not result in, any benefit to the mortgagee. The only benefit alleged in the petition is in bringing the vessels home from Brazil. But this was done no otherwise than in the usual course of the steamship company's business, upon its own account, and for its own benefit. The letters were given to the steamship company to enable it to prosecute its business according to its known and established methods, including, of course, the return of the vessels; and the express contract covered all the security that the parties contemplated for the use of those letters of credit. They were used just as they were designed to be used and not otherwise; and no other equitable lien can arise from such use than the lien which the contract provided for, whatever might be the incidental advantages resulting from the use of the letters of credit either to the steamship company, or to the mortgagee. The business thus conducted was for the sole benefit of the steamship company, the mortgagor. This business was to earn freight, and the freights (as possession was never taken under the mortgages) belonged exclusively to the steamship company.

There was no application of the moneys derived from the letters of credit to any permanent improvement of the vessels so as to increase the security of the mortgagee, nor to the payment of either the principal or the interest of the mortgage. Even the current interest remained unpaid all through the period covered by the letters of credit, and for a year prior thereto. These circumstances distinguish the present case from most of the cases cited for the petitioners; while other cases are distinguished by the fact that the claims of the petitioners were not contracted upon any credit of the vessels, but upon the personal credit of the steamship company only, or upon the express contract of the parties, which did not include any hypothecation of the vessels. The petition shows no such benefit, therefore, to the mortgagee as can serve as a basis for any equitable claim against the mortgaged fund.

The contention that the steamship company after default in paying interest on the mortgage on January 1, 1892, acted as the agent of

the mortgagee, is not sound in the only sense that could help the petitioners, viz., so as to make the mortgagee and its interest in the vessels chargeable with the alleged false statements of the company whereby the letters of credit were obtained. The relation of the mortgagor and mortgagee was, in fact, never properly that of principal and agent at all. The mortgagor before default held possession of the vessels by virtue of the reservation in the mortgage itself. Under this reservation it did not hold possession as agent of the mortgagee, nor for the mortgagee's benefit, but upon its own account, and for its own benefit alone. The business in which the ships were used was the mortgagor's business; the freights earned were the mortgagor's sole property; and no obligation rested on the mortgagor, either before or after default, such as would rest upon an agent, to account to the mortgagee therefor. The mortgagor retained sole control of the vessels and of the business conducted by their use; and the mortgagee was under no responsibility for anything connected with this business. The liens arising out of the navigation of mortgaged vessels rank ahead of the mortgage lien, not because the mortgagor is the agent of the mortgagee, but because the right of possession reserved to the mortgagor and assented to by the mortgagee, imports the mortgagor's right to use the vessel for all maritime purposes, and hence the right to create all such liens as are incident to that use.

After default, the relation of the parties is precisely the same as before default, as respects the mortgagor's use of the vessel, until the mortgagee asserts his right to take possession. Until then, the mortgagor is not the agent of the mortgagee to any greater extent, or in any different sense, than before default. The only difference in the relation of the parties is, that before default the mortgagor has a legal right to the possession and use of the vessels for a definite period, while the mortgagee holds the legal title subject to legal defeasance through the payment of the debt by the mortgagor on the day appointed; while after default, the mortgagor has only a right of possession subject to be dispossessed at any moment at the mortgagee's option, and the latter has an absolute legal title, subject only to the mortgagor's right of redemption in equity. The mortgagor's acts after default, therefore, create no claim, or lien, against the mortgagee any more than before, except such liens as arise in the maritime business of the ship, and are liens against the mortgagor's interest in the vessel; and no such liens upon the vessels, as I have held, arose in these cases.

It is claimed, however, that the silence and inaction of the mortgagee for over a year after default, during which time the petitioners' dealings with the mortgagor, believing it solvent, gave birth to the present claims, raise an equitable right to priority of payment out of the mortgaged fund. The exceptional cases cited in support of this contention, are fundamentally different, and have no application here, as I have before said, for the reason that here there was no improvement, or intended improvement, of the vessels, so as to increase the mortgage security; there was no concealment of the mortgage title, the registry of the mortgage being notice to all the

world; nor was there any credit of the steamers by the petitioners, nor any rightful expectation of any lien on the steamers, or on their proceeds; there was no actual or constructive fraud by the mortgagee; nothing was done by it to induce either of the petitioners to have any dealings with the mortgagor; nothing was done by it calculated to mislead the petitioners, nor was any desired information withheld by it. Nothing, in fact, is alleged against the mortgagee, except simple forbearance to press the mortgagor upon default, and to take possession; and no profit or benefit to the mortgagee is alleged from the delay. Such forbearance alone is wholly insufficient to give any independent equitable right as against the mortgagee in favor of a mere creditor whose dealing with the mortgagor has given him no lien on the vessel. If the petitioners' claims of priority of equitable right were directed against the accumulation of interest alone during the year of forbearance, the case would be slightly varied; but this accumulation of interest is here immaterial, as the principal is far in excess of the fund in the registry.

In the cases of the insurance companies, the fact that the insurance policies inured to the protection and security of the mortgagee, creates no equitable lien as against the mortgagee's interest, because the registry of the mortgages was legal notice to the insurers of the terms of the mortgage, and by those terms the mortgagor was bound to procure the insurance at its own charge. It did so; and the insurers dealt with the mortgagor exclusively, and upon its credit alone, and the mortgagee did nothing to induce those dealings. They have no claim, therefore, in law or in equity against the mortgagee, or the mortgage security; and the liens acquired by their judgments for the premiums due upon the policies are inferior to the prior lien of the mortgagee.

As I am quite clear that none of the facts and circumstances, or arguments set forth in the petitions are sufficient to uphold any right in equity against the proceeds of these vessels in favor of the petitioners as against the mortgagee's lien, it would be useless to send the parties before a commissioner to take proof of the matters alleged, and would only involve needless expense. If the views here, and previously expressed, are erroneous, an appeal from this decision will afford most speedy relief. The exceptions are, therefore, sustained, and the petitions dismissed.