## THE CATHERINE WHITING.

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

No. 67.

1. MARITIME LIENS—STATE STATUTE—NOTICE OF LIEN.

Under the New York statute (Laws 1879, c. 334), giving a lien on a vessel for repairs made under a contract with the master, owner, charterer, builder, or consignee, or with an agent of either of them, but providing that the debt shall cease to be a lien unless the lienor shall, within 30 days, file a notice of lien containing, among other things, "the particulars of the debt, and a statement of the account claimed to be due from such vessel," a notice does not contain a sufficient statement of the debt which merely states that a certain amount is due from a vessel "for work done upon the same, materials furnished, and labor and services performed," under instructions from the owner.

2. SAME—LABOR AND MATERIALS FOR REPAIRING SHIP.

Such statute does not give a lien for repairs furnished to a vessel under instructions from one who was neither owner, master, charterer, consignee, nor agent, and who had no interest in her, except under a contract with the owner, by which he agreed, at his own expense, to make certain repairs necessary to fit her for a different service, after which he was to employ her for a specified time as charterer, repaying himself for his expenditure, and dividing her earnings with the owner, of which facts the lien claimants were fully advised by the owner, and notified that they could not look to the vessel for payment.

Appeal from the District Court of the United States for the Southern District of New York.

This was a suit in admiralty to establish a lien on the steamer Catherine Whiting for labor performed and materials furnished in making certain repairs thereon. In the district court the following opinion was rendered by Brown, district judge:

"All the work, labor and materials for which the above suits are brought were procured upon contracts and employment by Metcalf alone. He was neither master of the vessel, nor owner, nor charterer, nor builder, nor consignee

of the vessel, nor the agent of either of them; nor was he in the possession or control of the vessel, nor had he any right thereto. His sole actual relation to the vessel was that arising from his contract with Flaherty, the sole owner, under which contract he would have a right to obtain possession and control for the purpose of making a voyage to the Pacific coast and Alaska and there trading with her on condition that he made certain improvements in the vessel necessary to fit her for that service. The expense of making these improvements was to be primarily at the sole charge of Metcalf, without any responsibility of Flaherty or the vessel therefor. Every person who dealt with the vessel found Flaherty in possession, and was notified that neither he nor the vessel would be liable, and as I have said all the work and materials were procured upon Metcalf's contracts alone. Metcalf never had the least authority from Flaherty to act as his agent, and Flaherty certainly never did anything, so far as shown by the evidence, to lead any of the libelants to suppose that Metcalf was his agent or the agent of the vessel. For these reasons no statutory lien, or direct liability on the part of Flaherty as principal, can be maintained. In The John Farron, 14 Blatchf. 24, Fed. Cas. No. 7,341, the employers were in possession and control of the vessel with apparent authority to bind her. That was not the case here.

"The claims of McGregor and others cannot be sustained on the ground that they were seamen, because I cannot find upon the evidence that they were employed as seamen or were understood to be so employed. The case of The Artisan, 9 Ben. 106, Fed. Cas. No. 568, is essentially different. There the owner had executed an actual charter of the vessel and the charterers had appointed a master who was in possession and command of the vessel, pursuant to the charter; the libelants were shipped as seamen for the voyage specified in the charter; and they were shipped by the master; they were held entitled to their wages as seamen, according to the terms of the shipment, because shipped for the voyage by the master, in pursuance of his actual authority. Here there was no charter from the owner, nor any master of the ship; nor was there any authority from the owner to ship a crew; the men were not hired as seamen, or shipped at all; they were mostly longshoremen and their claim of payment is mostly by the day at stevedores' rates.

"Reid and Duff fully understood that their employment was by Metcalf alone and on his responsibility. They were so notified by Flaherty and were not allowed to go to work until Flaherty by personal inquiries of the sellers of the boilers had been assured by them that the boilers had been paid for by Metcalf. It was in consequence of the express notice from Flaherty that Reid and Duff required from Metcalf additional security. If their claim had been good in other respects, moreover, their lien upon the vessel would have been lost through failure to file a proper notice of claim. The notice filed in July was more than 30 days after the completion of the work. The notice filed on June 15th, though in time, did not contain a statement of the 'particulars' of their claim as required by the state law of 1879. The notice was only a general statement of a debt to the amount of $2,400, 'due from said vessel for work done upon the same and for material furnished and labor and services performed under instructions from J. C. Metcalf, owner.' A part of the work to the amount of $400, as the evidence shows, was done by contract; the rest was claimed to be extra work. The notice of lien contains no specification of either, nor distinguishes one from the other.

"Baker, Carver & Morrell dealt with Metcalf alone, and made no inquiries whatever of Flaherty, and never saw him until after their work was done. They took an assignment of the advanced freights on a charter of the steamer which Metcalf negotiated wholly without authority. As they made no inquiry of Flaherty, the true owner, their dealings were at the risk of Metcalf's authority; and it is plain that he had no authority to represent or bind Flaherty or the vessel.

"I have further considered the case carefully to see if there were any equitable grounds upon which the vessel or Flaherty could be held to respond for any increased value of the vessel through the libelants' work, labor and material. The only ground of any equitable claim would be some inequitable conduct on the part of Flaherty in inducing the improvements by the libelants and tending to mislead them. Repeated reading of the stenographer's notes

satisfies me that no such ground can be maintained upon the evidence. The pleadings were not framed in order to present such a claim, nor is adequate evidence presented to reach a proper conclusion. Flaherty testifies that the steamer before his arrangement with Metcalf was in good condition for his employment of her in connection with the lighthouse business. He agreed to let Metcalf have her for trade on the Western coast on condition that he would make her fit therefor at his own sole cost and expense. I do not find that Flaherty ever did anything whatsoever inconsistent with this position. He relied upon Metcalf's representations that he had means for this purpose, and was evidently deceived in that regard. Metcalf plainly had no available means adequate to enter into such a contract, and the enterprise broke down from that cause. The project was not broken up by Flaherty, but fell through because Metcalf had not the means to carry out his undertaking to fit up the vessel, which was the condition of his acquiring any right to use her. The charter of the vessel, which Metcalf wrongfully made for the purpose of raising funds without Flaherty's knowledge, fell through, not by any act of Flaherty's, but because necessary changes in the vessel were not completed within the necessary time; and Metcalf's lack of funds, which by that time had become evident, made the further prosecution of the enterprise impracticable and it was therefore abandoned. Flaherty was evidently deceived by Metcalf's visionary schemes and imaginary resources. He was reassured to some extent by the supposed payment for the boilers by Metcalf, and on that understanding Flaherty signed the contract with him. When some weeks afterwards Metcalf's lack of money became painfully apparent, and it appeared probable that the men at work on the ship might not get their pay, he was naturally restive and impatient, both for his own protection and to avoid further sacrifices by the men themselves. He put no obstacles, however, in the way of Metcalf's complying with his contract, had he been able to do so; nor can I find that he offered any false allurements in the least to any of the men who contributed labor or materials.

"I must, therefore, dismiss the libels, without costs."

John A. Quintard, for appellants.

Leo Everett, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Inasmuch as a material man furnishing repairs to a vessel in her home port does not thereby acquire any maritime lien upon the vessel, this action can only be sustained upon the theory that the lien sought to be enforced was created pursuant to the state law, which gives a lien for such repairs, "if such debt is contracted by the master, owner, charterer, builder, or consignee of such ship or vessel, or by the agent of either of them, within this state," and provides that the debt shall cease to be a lien unless the lienor shall within 30 days after it was contracted file a notice of lien containing, among other things, "the particulars of the debt, and a statement of the account claimed to be due from such vessel," duly verified in the office of the clerk of the county in which such debt shall have been contracted. Laws 1879, c. 334. The repairs in controversy were begun on April 20 or 21, 1898, and were completed July 15th. The only notice of lien filed within 30 days after the debt was contracted is one stating a claim of lien for $2,400, "the said amount ($2,400) being due from said vessel for work done upon the same, materials furnished, and labor and services performed under instructions from J. C. Metcalf." We agree with the court below that this notice did not contain a statement of the "particulars of the debt," as required by the statute.

Aside from the technical defense, the facts of the case present a good defense upon the merits. The repairs were furnished to the vessel under instructions from one Metcalf. At the time one Flaherty was the sole owner of the vessel, and Metcalf was neither master, charterer, consignee, nor agent. Metcalf had entered upon a contract with Flaherty, by the terms of which he had agreed, at his own expense, to put boilers into the vessel, and make repairs to her machinery and hull necessary to fit her for a voyage to the Pacific coast, and by which Flaherty agreed that, upon the completion of the repairs, Metcalf could take possession of the vessel, and employ her as a charterer for a specified period, repaying himself the cost of the repairs, and dividing the earnings with Flaherty. When the repairs were begun, Flaherty, by his ship keeper, was in possession of the vessel; and while they were being made, although Flaherty was frequently present, the appellant was aware of the contract between Flaherty and Metcalf, and that Flaherty did not propose to permit Metcalf to have them made upon the credit of the vessel. The appellant was distinctly notified by Flaherty that he must not look to the vessel for his indemnity, but must rely exclusively upon Metcalf, and appellant took security from Metcalf by a mortgage on real estate and otherwise. Notwithstanding this, the appellant seems to have supposed that he could subject the vessel to a lien in invitum. Undoubtedly, if Flaherty had held out Metcalf as a part owner, or charterer, or agent, the vessel would have been liable, although he was not such in fact. But the appellant knew that Metcalf's only relation to the vessel was that of a prospective charterer. The decree of the court below dismissing the libel was correct, and is affirmed, with costs.