## THE COLFAX.

(District Court, E. D. New York. April 25, 1910.)

1. MARITIME LIENS (§ 20*)—SUPPLIES—STATE OF HOME PORT.

No maritime lien is presumed for supplies furnished in New York to a vessel whose home port is in the state, and unless an agreement therefor is shown a lien can only be secured by following the requirements of the state statute.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 27; Dec. Dig. § 20.*]

2. MARITIME LIENS (§ 25*)—STATUTORY LIEN.

A claimant held entitled to a lien for services and supplies furnished to a dredge on orders of the master, under Consol. Laws N. Y. 1909, c. 33, § 80.

[Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 25.* Created by state laws, see note to The Electron, 21 C. C. A. 21.]

In admiralty. George L. Penny and Peter Wyckoff urge claims against the scow Colfax. Decree for Wyckoff, and against Penny.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frank C. Barker, for libelants.
Foley, Martin & Nelson and Alexander & Ash, for claimants.

CHATFIELD, District Judge. The libelant Wyckoff has claimed certain items, amounting to $82, for the services of a boat, the Eel, which carried water from the pumping station to the dredge Colfax, while at work within this district; also $2.35 for supplies, $5 for towing, and $267.15 for water. These services were rendered and supplies furnished between the month of December, 1908, and the 13th day of August, 1909. On the 8th day of September, 1909, the vessel was sold in another action by the United States marshal, and the proceeds are now in the registry of the court. On October 27, 1909, Wyckoff filed a specification of lien, according to the laws of the state of New York; his libel in the present action having been begun upon the 7th day of September, 1909, and the libel having been amended to set forth the filing of the lien above referred to.

The libelant Penny claims a lien for certain lumber and other merchandise, of which the last item was delivered May 26, 1909, for which he filed a libel in this court on September 8, 1909, and a lien in the office of the clerk of Suffolk county on November 9, 1909.

Both Penny and Wyckoff have claims which seem to come within the subject-matter of chapter 33, § 80, of the Consolidated Laws of New York, passed February 17, 1909; but in the Penny Case a notice of lien was not properly filed, nor was this action started within 90 days after the furnishing of the last item, or any of the items sought to be secured thereby.

But the provisions of the New York law are expressly limited in application to debts which are not liens by maritime law. It is necessary, therefore (inasmuch as the state law was not complied with in the Penny Case, although both libelants began their actions in admiralty by the service of process before filing the notices of lien under the state statute), to consider whether a maritime lien exists. The Golden Rod, 153 Fed. 171, 82 C. C. A. 345. The services were rendered and the supplies furnished at a place within the state, but apparently outside of the home port of the vessel, which was the port of New York. The Alice Tainter, 14 Blatch. 41, Fed. Cas. No. 195; The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; The Algonquin (D. C.) 88 Fed. 318.

The items in question are not of such a nature that a maritime lien (such as salvage, towage, pilotage, and wages) will be presumed under the admiralty jurisdiction of the United States. The Alligator, 161 Fed. 37, 88 C. C. A. 201. As stated above, the items are apparently of such a sort as are defined in the New York statute, and hence under the practice treating all vessels owned in the state, which includes the home port of the owner, as domestic vessels (The General Smith, 17 U. S. 438, 4 L. Ed. 609), no purely maritime lien could be maintained. As to both boats, therefore, the existence of a lien must be judged by the standards of the state lien law, and the Wyckoff lien must be held valid, while the Penny lien expired and was lost.

Even if measured by purely admiralty standards, and assuming that

the vessel could be deemed to have been in a port other than her home port, or if the New York law should be construed as not covering items of this sort, the result would be the same. The testimony is to the effect that in the case of the libelant Wyckoff credit was given at the time of selling the items to the vessel, upon orders by the master, who was not the owner. But, so far as the Penny claim is concerned, the credit was actually given to the owners of the dredge, and no maritime lien has been proven. The actions in personam previously brought prove nothing by their mere existence, and no part of the claims have been collected thereby.

The libelant Wyckoff may have a decree. The libel of Penny must be dismissed, but without costs.