## THE ATLANTIC CITY.

(Circuit Court of Appeals, Third Circuit. January 28, 1915.)

No. 1884.

**1. ADMIRALTY ⚶101—JURISDICTION—DISTRIBUTION OF FUND IN COURT.**

A court of admiralty has jurisdiction to determine the validity and rank of claims against a fund remaining in its registry after the payment of maritime liens for which a vessel has been sold, although the claims are not maritime in character.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 684–708; Dec. Dig. ⚶101.]

**2. MARITIME LIENS ⚶16—STATUTORY LIENS NOT MARITIME—VALIDITY.**

A lien given by a state statute for the building of a vessel is not maritime in its nature, and derives nothing from the maritime law, and its validity depends entirely upon compliance with the conditions imposed by the statute.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 21; Dec. Dig. ⚶16.

Liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

**3. MARITIME LIENS ⚶32—STATUTORY LIENS NOT MARITIME—VALIDITY—NOTICE.**

Under Lien Law (Consol. Laws, N. Y. c. 33) §§ 80, 82, which give a lien for work or material furnished for the building of a vessel, subject to the requirement that a notice of lien shall be filed within 90 days, to which, if the debt is based on a written contract, a copy of such contract shall be attached, a failure to attach such copy is fatal to the lien; but where extra work and material are furnished under subsequent oral contracts, not authorized by the written contract, the notice, if otherwise sufficient, will create a lien therefor, although a copy of the original contract is not attached.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 49–52; Dec. Dig. ⚶32.]

Appeal from the District Court of the United States for the District of New Jersey; William H. Hunt, Judge.

On distribution in admiralty of proceeds of the steamer Atlantic City. From a decree giving priority to the claim of Staten Island Shipbuilding Company, the West Jersey Trust Company appeals. Modified.

Howard M. Long, of Philadelphia, Pa., for appellant.
Henry W. Baird, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. [1] The dispute in this case grows out of the distribution of a fund in the admiralty. The steamer

Atlantic City, owned by the Atlantic City Transportation Company, had been attached under a libel for maritime supplies, and on May 9, 1913, she was sold as perishable. The price obtained at the sale was deposited in the registry of the court, and a commissioner was appointed to make distribution. After the maritime liens had been allowed, a considerable sum of money remained, to which three claimants appeared, the Staten Island Shipbuilding Company, the West Jersey Trust Company, and Warren Webster. Neither of them presented a claim that was maritime in its nature; the Shipbuilding Company asserted a lien growing out of work done in the construction of the vessel; the Trust Company asserted a lien under a blanket first mortgage given by the Transportation Company; and Warren Webster's claim rests upon a second mortgage on the steamer. The jurisdiction of the admiralty to entertain these claims was challenged, but in support of the jurisdiction we need only refer to Schuchardt v. Babbage, 19 How. 239, 15 L. Ed. 625, and The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345.

The claim of Warren Webster is conceded to be the third in rank; and, since the balance for distribution is not large enough to pay either of the other two claims in full, we shall confine ourselves to the principal question at issue between the Shipbuilding Company and the trustee of the first mortgage. For that purpose we shall assume that the mortgage binds the vessel, and shall consider whether the District Court was right in awarding the balance of the fund to the Shipbuilding Company. The validity of the company's liens is attacked, and as the opinion below does not discuss this question we shall be obliged to take it up. The Trust Company cannot share in the fund, if the claims for construction are entitled to priority, and therefore it is vital to determine whether the liens are good.

The facts are as follows: Early in 1911 the Transportation Company, a New Jersey corporation whose principal business was the carriage of freight and passengers by water between Atlantic City and Philadelphia, and Atlantic City and New York, bought an uncompleted vessel then at City Island, N. Y. Soon afterwards, in the following May, the company gave the first mortgage in question to secure $100,-000 of bonds. The mortgage covered the company's real estate, with other property, including three steamships, described as "Str. Alpha, Str. Goldboro, and N. Y. Str. (complete)." (The "N. Y. Str." was named Atlantic City in March, 1912.) On January 29, 1912, the Shipbuilding Company (whose yard is at Port Richmond, N. Y.), having previously done a little work on the uncompleted vessel, agreed in writing with the Transportation Company to do further work thereon, and to furnish materials and supplies in accordance with the plans and specifications annexed to the contract. No departure from these plans and specifications was to be allowed unless authorized in writing, and no compensation for additions or alterations was to be made unless these had been first similarly authorized. For the work and material specifically included in the contract the Shipbuilding Company was to receive $36,910 in the following manner: $3,910 when the steamer should be delivered to the Port Richmond yard, and $33,000 when the work should be finished and the steamer delivered—$13,000 in cash,

and $20,000 in three-months notes, the notes to enjoy the privilege of renewal in whole or in part during five years, but to be secured by the Transportation Company's first mortgage bonds, $1,200 in bonds for $1,000 in notes, the bonds to be released proportionally as the notes should be reduced. After January 29 the Shipbuilding Company brought the uncompleted vessel to Port Richmond, and went on with the contract. During the construction extra work was agreed upon— for which $9,540.14 is still unpaid—and this was authorized in part by letters written to the Shipbuilding Company by the Transportation Company and by Mr. Drake, its supervising architect. There is no dispute about the accuracy of the foregoing figures.

On July 16, as the time approached for delivering the steamer, the parties interested—namely, the Transportation Company, the Shipbuilding Company, and Warren Webster, who was a large holder of the Transportation Company's stock and bonds—entered into a written agreement, to which the Trust Company was not a party. It is likely that one reason for the agreement was the fact that all the first mortgage bonds had been disposed of, so that the Transportation Company had none to deliver as security for its notes. But Webster had bonds in considerable amount, and he agreed to turn over $24,000 of them to the Transportation Company, so that the contract of January 29 could be complied with in this respect, and the steamer delivered. The agreement of July 16 provided that the Shipbuilding Company should file a notice of lien against the steamer for $33,000 under the New York statute hereafter referred to; that bonds for $24,000 should pass from Webster to the Transportation Company, and thence to the Shipbuilding Company; that the Transportation Company should give its three-months note for $20,000 to the Shipbuilding Company, secured by Webster's bonds; that, when the note first fell due, the interest and at least $1,000 of the principal should be paid, whereupon the note should be extended for three months; that similar extensions should be granted if similar payments should be made thereafter during a period of five years; that, whenever a payment of principal should be made, a proportional amount of the bonds held as collateral security should be returned; that Webster should be subrogated to the rights of the Shipbuilding Company under its lien, so far as the company should receive money on account of its claim of $33,000; and, finally, that the agreement of January 29 should in no wise be affected, except as the subrogation of Webster might affect it.

On July 22, 1912, the steamer was delivered, and the Transportation Company gave a note for $20,000, secured by the $24,000 of bonds. Under the contract of January 29 the Shipbuilding Company had received in cash the first payment of $3,910, and $13,000 additional; the remainder of the agreed price being secured by the note and bonds referred to. On October 23—the due date of the note—the Shipbuilding Company was paid the interest and $1,000 on account, and the note was thereupon extended for three months; and on March 3, 1913, a further payment of $1,000 was made, which was apparently accepted as a second three months' renewal, although the payment was made several weeks after the note fell due for the second time. No other payment appears to have been made, and indeed the Transportation

Company went into the hands of a receiver before October 18, 1912. Webster had advanced $6,000 of the $13,000, and also the $2,000 just referred to.

Meanwhile, on September 3, 1912, the Shipbuilding Company had filed a notice of lien with the county clerk of the proper county, claiming a lien for $33,000 under the law of New York (Consol. Laws 1909, c. 33, art. 4, §§ 80, 82, 83) for the labor and materials specifically covered by the contract of January 29. And on October 28 another notice was filed under the same statute for extra work amounting to $9,540.-14. The sufficiency of these notices must now be considered.

The sections in question are as follows:

"Sec. 80. Liens on Vessels. A debt which is not a lien by the maritime law, and which amounts to fifty dollars or upwards, on a seagoing or ocean bound vessel, or fifteen dollars or upwards on any other vessel shall be a lien upon such vessel, her tackle, apparel and furniture, and shall be preferred to all other liens thereon, except mariners' wages, if such debt is contracted by the master, owner, charterer, builder or consignee of such ship or vessel, or by the agent of either of them, within this State, for either of the following purposes:

"1. For work done or material or other articles furnished in this State for or towards the building, repairing, fitting, furnishing or equipping of such vessel. * * *

"Sec. 82. Notice of Lien, When to be Filed. Every debt specified in section eighty shall cease to be a lien upon such vessel unless the lienor shall, within ninety days after the debt becomes due, except as hereinafter provided, file a notice of lien, containing the name of the vessel, the name of the owner, if known, the particulars of the debt and a statement of the amount claimed to be due from such vessel, and verified by the lienor, his legal representative, agent or assignee, to be true and correct. If the debt is based upon a written contract, a copy of such contract shall be attached to such notice. The notice shall be filed in the office of the clerk of the county in which the debt is contracted. * * *

"Sec. 83. Duration of Lien. Every lien for a debt shall cease, if the vessel navigates the western or northwestern lakes, or either of them, or the St. Lawrence river, at the expiration of six months after the first of January next succeeding the time when the debt was contracted, and in case of any other vessel, at the expiration of twelve months after the debt was contracted. If, upon the expiration of the time herein limited in either of such cases, such vessel shall be absent from the port at which the debt was contracted, the lien shall continue until the expiration of thirty days after the return of such vessel to such port. If proceedings are instituted for the enforcement of the lien within the time herein limited, such lien shall continue until the termination of such proceedings."

[2] It is well settled that a contract for the construction of a vessel is not a maritime contract (Knapp v. McCaffrey, 177 U. S. 643;[1] The Robert W. Parsons, 191 U. S. 25, 24 Sup. Ct. 8, 48 L. Ed. 73; The Winnebago, 141 Fed. 945, 73 C. C. A. 295), and therefore the statute of a state cannot give a maritime lien for such a service. A state may sometimes create maritime liens, and these are enforceable as of right and exclusively in a court of admiralty. The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. But undoubtedly a state Legislature may give a lien of some kind (not maritime) for the construction of a vessel, and sometimes, as in the present situation, a court of admiralty will permit such a claim to be presented against the balance of a fund that may remain in the registry after satisfying maritime liens. We repeat, however, that a lien given by a state

[1] 20 Sup. Ct. 824, 44 L. Ed. 921.

statute for building a ship is not maritime in its nature, and is not to be treated as if it enjoyed the rights belonging to that class of obligations. It must stand on the statute that gives it birth, and its validity must be judged thereby. It is a right created by the statute, but upon conditions; and if the conditions are not complied with, the lien either does not arise at all or will afterwards be lost. There are numerous decisions to this effect on the general subject, among which we cite The Newcomb (D. C. Pa.) 12 Fed. 735; The Helen Brown (D. C. Mass.) 28 Fed. 111; The Huron (D. C. Mass.) 29 Fed. 183; The Levering (D. C. N. J.) 35 Fed. 783; The Cara (C. C. La.) 50 Fed. 222; The Vigilant ( C. C. A., 3d Cir.) 151 Fed. 747, 81 C. C. A. 371. And the following citations refer either to the consolidated statute now under consideration, or to one of its predecessors that dealt with a similar subject: The Arctic (D. C.) 22 Fed. 126; The Ella B. (D. C.) 26 Fed. 111; The Niagara (D. C.) 31 Fed. 163; The Allianca (D. C.) 56 Fed. 612, and 70 Fed. 258; The Warner Miller Co. (D. C.) 120 Fed. 520; The Colfax (D. C.) 179 Fed. 975; The Whiting (C. C. A., 2d Cir.) 99 Fed. 445, 39 C. C. A. 592; The Edith, 94 U. S. 518, 24 L. Ed. 167.

[3] This being the established law, we need only add that (so far as the notice filed in September is concerned) the Shipbuilding Company failed to comply with one of the important conditions laid down by the New York statute. It failed to obey the requirement that, "if the debt is based upon a written contract, a copy of such contract shall be attached to such notice." The debt that is the subject of this notice was certainly based on the written contract of January 29, but no copy of such contract was attached to the notice. The decision in American Trust Co. v. Fletcher (C. C. A., 1st Cir.) 173 Fed. 471, 97 C. C. A. 477, on which the Shipbuilding Company mainly relies, is not in point. The claim for construction that was allowed to prevail in that case against a mortgage was a valid lien under a statute of New Jersey, whereas the claim now under examination must be rejected because it never became a lien at all. We have reached this conclusion with some reluctance, for we agree that the claim has much to recommend it, but in our opinion it cannot support a lien, either legal or equitable, because the Shipbuilding Company failed to comply with the conditions laid down by the law of New York. This being so, the claim has no standing in this distribution, and must yield place to the first mortgage. Inferentially, the decree of the District Court declares the mortgage to be valid, and in that respect the decree is not attacked. The only person interested in such an attack is Warren Webster, and he has taken no appeal.

But the debt for extras embraced in the notice filed in October requires further consideration. As it seems to us, this claim stands upon a different footing. Items for extra work are not based on the contract of January 29; on the contrary, that agreement excludes them, for it forbids the parties either to allow or to compensate them unless a further written contract be made in relation thereto. But of course the parties were at liberty to modify this provision by subsequent agreement, and it is clear that they did so modify it. No dispute on this subject exists between them, neither insists that the

provision shall be enforced, and both admit that the provision was disregarded, and that the extra work was ordered and furnished in accordance with their convenience. On three occasions (Exhibits 14 and 15, Exhibit 24, and Exhibit 25) a written contract appears to have been made, but in the great majority of instances this was not the case. Sometimes the Transportation Company gave a written order, and this was verbally accepted; sometimes the Shipbuilding Company made a verbal bid, and this was accepted in writing; sometimes no written evidence appears of so important a term as the price; sometimes everything was verbal—in a word, the evidence leaves no room to doubt that hardly any attention was paid to the provision in question. Of course, in the instances where the contract is actually found in writing, the New York statute must govern, and, as a copy thereof was not filed, the items thus dealt with—amounting to $335+$368+$145=$848—must fall. But we see no defense to the other items. As all these extras were ordered and furnished, and as the prices charged are correct, the statute allows a lien therefor. And as it was all one transaction, and not a series of separate and independent contracts, the notice of lien was filed in time.

It follows, therefore, that the decree below must be modified in accordance with this opinion; the October lien is to be allowed for the amount claimed, less $848, but the September lien to be disallowed. And we further direct that the costs in this court and in the District Court shall be equally divided.