## THE LYNDHURST.

### MAGEE *v.* THE LYNDHURST.

*(District Court, S. D. New York. January 11, 1892.)*

1. REPAIRS AND SUPPLIES — FOREIGN VESSELS — LIENS — BONA FIDE PURCHASERS — LACHES.

Supplies being furnished to a vessel known to belong in another state; and the libel not being filed until the last day of the year after the supplies were furnished; and the vessel having been in the mean time twice sold to *bona fide* purchasers for full value, without notice, from six to eight months after the supplies were furnished, though they made special efforts to learn of any existing liens; and the vendor becoming in the mean time insolvent; and the vessel being all the time amenable to process daily: *Held* that, as against the *bona fide* purchasers, the maritime lien was lost, through laches.

2. STATE LIENS — CONSTRUCTION — NOT APPLICABLE TO FOREIGN VESSELS — ADMIRALTY LAW NOT CONTROLLED BY STATE LEGISLATION.

The law of the state of New York allowing a lien for supplies furnished to any vessel upon filing a notice within 30 days in the county clerk's office, the lien to continue "for one year," *held*, (1) following *The Chusan*, 2 Story, 455, that the statute was not applicable to foreign vessels on which a maritime lien existed for the same supplies; and, (2) if the statute was applicable at all to foreign vessels, that state legislation was incompetent to change the rules of decision in admiralty as respects the scope, effect, or priority of liens as regards other lienors or *bona fide* purchasers, or to impart to such state liens any superior qualities or attributes over maritime liens; that both are subject to the same limitations, as respects laches; and on both grounds the libel was dismissed.

In Admiralty. Libel for repairs. Dismissed.

*Carpenter & Mosher*, for libelant.
*Alexander & Ash*, for claimant.

BROWN, J. In July, 1890, the libelant furnished materials to the value of $70.44 for the repair of the steam-tug Lyndhurst, at Athens, Green county, within this state, on which $24.44 were paid on account, leaving a balance of $50, to recover which the above libel was filed. On the 18th of August following a notice was filed in the county clerk's office of Green county, pursuant to law, claiming a lien under the state statute. The owner of the tug resided in New Jersey, and the tug belonged at Hoboken. The evidence shows that the libelant had notice of these facts when the materials were furnished. In November, 1890, the owner not being able to pay a mortgage which had become due upon the vessel, the mortgagee, who was also a resident of New Jersey, took possession of her. In December she was arrested under numerous claims for liens, which the mortgagee got released by filing bonds therefor; and on the 24th of January, 1891, he sold her to F. and J. Russell, *bona fide* purchasers, without notice of the present claim, for $6,500, her full value, which was paid in cash. On the 28th of March following she was sold and conveyed by them *bona fide* and for a full consideration to the Newtown Creek Towing Company, which is the claimant defendant, and of which the Messrs. Russell were then and are now managing officers. Before the sale to Messrs. Russell was consummated, searches and careful inquiries were made for any outstanding liens. None were heard of except those which had been bonded. The libelant's lien was not among those claims, and no notice of it was discovered by the purchasers or their attorneys, nor was there anything to put them upon inquiry in Greene county. This libel was filed on July 18, 1891. The tug was engaged in the ordinary towing business of this port, and was amenable to process daily from the time when the repairs were made.

The lien in this case was a maritime lien. As against a *bona fide* purchaser who makes all reasonable efforts to discover incumbrances, and fails to find any, such a lien, after a delay of nearly a year to take any steps to enforce it, where the vessel has been all the time within easy reach of process, and the vendor, meantime, as in this case, has become insolvent, is lost through laches. After such ample opportunity to enforce the lien, the loss should fall upon the lienor, and not on the *bona fide* vendee. The period of limitation of liens in admiralty, as against a *bona fide* purchaser, is "a reasonable opportunity to enforce them." *The Chusan*, 2 Story, 455; *The Utility*, Bl. & H. 218; *The Eliza Jane*, 1 Spr. 152; *The Lillie Mills*, Id. 307; *The Bristol*, 11 Fed. Rep. 156, 163. In affirming the decision of this court in the case last cited, WALLACE, J., says, (20 Fed. Rep. 800:) "Admiralty denies the privilege of enforcing a lien which has been suffered to lie dormant without excuse until the rights of innocent third persons would be prejudiced if it should be recognized." In the present case there was no good reason for the long delay.

The libelant, however, claims that his lien continues for a year under the express provision of the state statute. It is unreasonable, however, to suppose that the design of the state statute was to provide a lien for supplies in cases already covered by the maritime law; that is to say, to create two independent liens for the same thing. Judge STORY in the case of *The Chusan*, 2 Story, 455, referring to a similar claim under the New York statute, held that the statute was not applicable to foreign vessels; and I have not been referred to any different decision. This should be followed until overruled by higher authority. Even if the statute could be held to refer to foreign vessels at all, I doubt whether it is competent for state legislation to change the maritime law, or the rules of decision to be applied by courts of admiralty in the administration of that law, further than by the mere establishment and annexing of a lien to marine contracts or torts, which liens courts of admiralty alone may recognize and enforce. See the *J. F. Warner*, 22 Fed. Rep. 342, 345; *Holmes* v. *Railway Co.*, 5 Fed. Rep. 75; *The Garland*, Id. 924; *Brookman* v. *Hamill*, 43 N. Y. 554; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Poole* v. *Kermit*, 59 N. Y. 554. In *The Chusan*, *supra*, STORY, J., held that state legislation could not abolish a maritime lien. The maritime law deals largely with interstate and international rights and relations. The constitution, in conferring upon the federal courts exclusive jurisdiction of admiralty and maritime causes, manifestly designed to provide for a single harmonious national system of maritime law. To accomplish this it confined its administration to the national tribunals alone. *The Lottawanna*, 21 Wall. 558, 575; *In re Long Island, etc., Transp. Co.*, 5 Fed. Rep. 599, 619; *The Manhassett*, 18 Fed. Rep. 922. No such national system could exist if its principles and rules of decision were subject to the legislation of 44 different states. Instead of one system, we should have 44 or more state systems, and no strictly maritime law at all, save what each state might choose to leave standing. Such a condition would be one of chaos in our international relations, and full of confusion and complexity as between the states. The inference is that the constitution designed to avoid precisely these difficulties. Nor is it reasonable to suppose that the constitution designed to permit state legislatures to prescribe the rules of law by which the federal courts should adjudge causes *in rem*, when it expressly withdrew from the state courts all cognizance of such causes.

In the case of *The Guiding Star*, 18 Fed. Rep. 263, 268, Mr. Justice MATTHEWS says:

"In enforcing the statutory lien in maritime causes, admiralty courts do not adopt the statute itself, or the construction placed upon it by the courts of common law or of equity, when they apply it. Everything required by the statute as a condition on which the lien arises and vests must, of course, be regarded by courts of admiralty; for they can only act in enforcing a lien when the statute has, according to its terms, conferred it; but beyond that the statute, as such, does not furnish the rule for governing the decision of the cause in admiralty, as between conflicting claims and liens. The maritime law treats the lien, because conferred upon a maritime contract by the

statute, as if it had been conferred by itself, and consequently upon the same footing as all maritime liens; the order of payment between them being determinable upon its own principles."

And in the case of *The Madrid*, 40 Fed. Rep. 677, 681, Mr. Justice LAMAR observes that "this lien given by the local statute * * * is itself in the nature of a maritime lien;" that is, as the context shows, as respects its *status* and scope. See, also, *The Wyoming*, 35 Fed. Rep. 548, 550; *The Menominie*, 36 Fed. Rep. 197, 204; *The North Cambria*, 40 Fed. Rep. 656.

By an exceptional practice stated by Mr. Justice BRADLEY in *The Lottawanna*, 21 Wall. 558, 580, to be anomalous, but founded upon colonial usage, the authority of state legislation to establish a lien *in rem* for the satisfaction of maritime contracts, or maritime torts, is recognized, (*The J. F. Warner*, 22 Fed. Rep. 342, 345, and cases there cited;) and see *Manchester* v. *Massachusetts*, 139 U. S. 240, 11 Sup. Ct. Rep. 559. But this exceptional and anomalous authority is not to be extended beyond the mere allowance of a lien, when conferred. *The Sylvan Glen*, 9 Fed. Rep. 336. Amid somewhat conflicting decisions, the weight of authority is, I think, to treat state liens, in respect to their *status*, scope, and effect, the same as strictly maritime liens, (*The Madrid*, *supra;*) and in effect, as Mr. Justice LAMAR observes, "in the nature of a maritime lien itself." While having, therefore, similar attributes and privileges, they must be subjected to the same limitations as regards laches and the rights of other lienors or *bona fide* purchasers, as those maritime liens which they most resemble, without reference to any superior qualities or attributes sought to be imparted to them by state legislation. See cases above cited. On both grounds the libel must be dismissed, with costs.