## THE SARATOGA.

(Circuit Court of Appeals, Second Circuit. April 14, 1913.)

No. 160.

**1. MARITIME LIENS (§ 1*)—EXISTENCE—STATUTES.**

Prior to Act Cong. June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), giving a maritime lien on domestic vessels for repairs, and superseding all state laws on the subject, there was no lien in the United States for repairs made or supplies furnished to domestic vessels, unless given by a statute of the state where the repairs were made and the supplies furnished.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 1; Dec. Dig. § 1.*]

**2. MARITIME LIENS (§ 17*)—REPAIRS—STATUTES.**

Act Cong. June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), giving a maritime lien for repairs furnished to domestic vessels, does not apply to a claim for repairs furnished in July, 1907.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 22; Dec. Dig. § 17.*]

**3. MARITIME LIENS (§ 28*)—REPAIRS—AUTHORITY OF CAPTAIN.**

The owner of a domestic vessel could not by agreement create a maritime lien in favor of libelant for repairs furnished to the ship, good as against subsequent owners.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 46, 47; Dec. Dig. § 28.*]

**4. MARITIME LIENS (§ 17*)—REPAIRS—STATE STATUTES—CONSTRUCTION.**

Code Va. 1904, § 2963, provides that a person having a claim against the master or owner of a steamboat found within the jurisdiction of the state for materials or supplies may in a pending suit sue out an attachment against the vessel, etc. *Held* not to create a maritime lien for repairs furnished on vessels within the state, so as to create a jus in re and authorize a proceeding in rem against a vessel, but to confer a mere right of attachment on vessels found within the jurisdiction of the state in an action for debt.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 22; Dec. Dig. § 17.*

Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Newport News Shipbuilding & Dry Dock Company against the Saratoga to enforce an alleged lien for repairs. From a judgment for libelant, the New York, Albany & Troy Transportation Company, claimant, appeals. Reversed.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Roscoe H. Hupper, both of New York City, of counsel), for appellant.

Carpenter & Park, of New York City (Samuel Park, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. March 24, 1911, the Newport News Shipbuilding & Dry Dock Company filed this libel in the United States

District Court for the Southern District of New York against the steamer Saratoga. The libel alleged that July 8, 1907, one Hudson, a resident of Norfolk, Va., and owner of the steamer, employed the libelant to do repairs on her, the vessel being pledged as security for payment; that repairs costing $19,914.86 were completed September 12th, and there remained due and unpaid at the time of the filing of the libel a balance of $4,500, with interest. The only evidence of an agreement that the repairs were to be made upon the credit of the vessel was the following written order, signed by Hudson, supplemented by his testimony that he knew it to be the custom at all shipyards to look to the vessel and owners:

"Newport News, Va., July 8, '07.

"Newport News Shipbuilding & Dry Dock Co.:

"Please furnish labor and material for performing the following work on Str. Saratoga for account of vessel and owners: Install boilers, repair engine, paddle wheels, and get machinery in shape to run boat as directed by Capt. Hudson. Do by day's work. Rush work.          Geo. P. Hudson."

November 1, 1907, Hudson sold the steamer to the New York & Albany Transportation Company. August 3, 1909, that company having gone into the hands of a receiver, she was sold at public auction to the Manhattan Navigation Company, which sale having been set aside, she was November 25, 1910, sold again to one Fentriss, who on December 9, 1910, sold her to the claimant.

[1-4] It was settled in the case of The General Smith, 4 Wheat. 438, 4 L. Ed. 609, that there is in this country no lien for repairs made or supplies furnished to domestic vessels, unless it be given by a statute of the state where the repairs are made or the supplies are furnished. This continued to be the law until Congress enacted Act June 23, 1910, c. 373, 36 Stat. at L. 604 (U. S. Comp. St. Supp. 1911, p. 1191), giving such a lien and superseding all state laws on the subject. This act does not apply to the claim sued on, which arose in 1907. Obviously Hudson could not by agreement create a maritime lien in favor of the libelant good against subsequent owners of the vessel. Therefore the libelant could not recover on the claim as stated in the libel. The answer, however, set up that the repairs were made on the personal credit of Hudson and that the libelant was barred by laches from setting up any lien it may have had. The parties subsequently stipulated that section 2963 of the Code of Virginia should be considered as evidence in the case. It reads as follows:

Section 2963 of the Code of Virginia:

"If any person has any claim against the master or owner of any steamboat or other vessel, raft, or river craft, or against any steamboat or other vessel, raft, or river craft, found within the jurisdiction of the state, for materials or supplies furnished or provided, or for work done for, in, or upon the same, or for wharfage, salvage, pilotage, or for any contract for transportation of, or any injury done to, any person or property by such steamboat or other vessel, raft, or river craft, or by any person having charge of her, or in her employment, such person shall have a lien upon such steamboat or other vessel, raft, or river craft, for such materials or supplies furnished, work done, or services rendered, wharfage, salvage, pilotage, and for such contract or injury as aforesaid; and may, in a pending suit, sue out of the clerk's office of the circuit court of the county, or in the circuit or corporation court of the corporation in which such steamboat or other vessel, raft, or river craft,

may be found, an attachment against such steamboat or other vessel, raft, or river craft, with all her tackle, apparel, furniture, and appurtenances, or against the estate of such master or owner. Any attachment may be sued out under this section for a cause of action that may have arisen without the jurisdiction of this state, as well as within it, if the steamboat or other vessel, raft, or river craft, be within the jurisdiction of this state at the time the attachment is sued out or executed."

Thus we are required to determine whether the law of Virginia did impose a lien upon the steamer. Although the statute does state that there shall be a lien upon every vessel for materials or supplies furnished and work done, the question is whether a jus in re—that is, a property right in the vessel continuing through all changes in ownership—is intended, or only a lien resulting from judicial seizure. We think the latter is meant. The act does not authorize any proceeding in rem against the vessel. It provides that in a *pending suit* an attachment may issue against the vessel or the estate of the master or owner. This may issue even when the materials have been supplied and the work done without the state. No distinction is made between vessels owned in Virginia and those owned in other states. Surely the state of Virginia cannot have intended to create a lien upon domestic vessels of other states for materials supplied or work done there. Moreover, the lien is given and the right to attach conferred upon vessels "found within the jurisdiction of the state." If a jus in re had been intended, it could have been enforced in the admiralty wherever the vessel was found. It is also noteworthy that the section is contained in chapter 141, entitled "Of Attachment and of Bail." Section 2971 of that chapter provides that the plaintiff shall have a lien "from the time of the levying of such attachment." This seems to plainly imply that he shall not have it before. All of which goes, we think, to show that the statute only provides a provisional remedy or mesne process quite familiar at common law.

We have not overlooked the fact that Judge Hughes has come to a contrary conclusion as the result of his opinion that the act gives a right against the vessel in rem. Stewart v. Potomac Ferry Co. (C. C.) 12 Fed. 296; Aitcheson v. Endless Dredge (D. C.) 40 Fed. 253. We think these decisions inconsistent with Garcia y Leon v. Galceran, 11 Wall. 185, 20 L. Ed. 74. In it the law of Louisiana giving a lien or privilegium for seamen's wages was under consideration. The seamen proceeded at common law against the owner in personam and by virtue of the privilegium seized the vessel. From a judgment in their favor the owner took a writ of error to the Supreme Court, contending that the action was one in rem, and therefore not within the jurisdiction of the state court. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397; The Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451. The judgment, however, was affirmed; Mr. Justice Clifford saying at pages 188, 189 of 11 Wall. (20 L. Ed. 74):

"Services, as mariners on board the schooner Gallego, were rendered by each of the appellees in these cases, and their claims for wages remaining unpaid, on the 8th of August, 1868, they severally brought suit in personam against Joseph Maristany, the sole owner of the schooner, to recover the respective amounts due to them as wages for their services as such mariners.

"Claims of this kind create a lien upon the vessel under the laws of that

state quite similar to the lien which arises in such cases under the maritime law. They accordingly applied to the court where the suits were returnable for writs of sequestration, and the same, having been granted and placed in the hands of the sheriff for service, were levied upon the schooner as a security to respond to the judgments which the plaintiffs in the respective suits might recover against the owner of the vessel, as the defendant in the several suits.

"Such a writ when duly issued and served in such a case has substantially the same effect in the practice of the courts of that state as an attachment on mesne process in jurisdictions where a creditor is authorized to employ such a process to create a lien upon the property of his debtor as a security to respond to his judgment. Neither the writ of sequestration nor the process of attachment is a proceeding in rem, as known and practiced in the admiralty, nor do they bear any analogy whatever to such a proceeding, as the suit in all such cases is a suit against the owner of the property, and not against the property as an offending thing, as in case where the libel is in rem in the admiralty court to enforce a maritime lien in the property."

The decree is reversed, with costs.