## THE ATHINAI.

### (District Court, S. D. New York. February 8, 1916.)

1. MARITIME LIENS ⊙⇒9—STATUTORY LIENS—ENFORCEMENT.

The general maritime law gives no lien, enforceable in rem against a ship bringing into port passengers stricken with disease or exposed to infection, and support for such a lien must be found in some statute enacted by competent authority, and the provisions of such statute must be reasonably complied with.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 13; Dec. Dig. ⊙⇒9.]

2. MARITIME LIENS ⊙⇒57—STATUTORY LIENS—POWER OF STATE.

It is beyond the power of a state to create a lien enforceable in admiralty by process in rem against a foreign ship.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 96; Dec. Dig. ⊙⇒57.]

3. MARITIME LIENS ⊙⇒32—STATUTORY LIENS—SUIT FOR ENFORCEMENT.

Under Public Health Law of New York (Consol. Laws N. Y. c. 45) § 138, as amended by Laws N. Y. 1913, c. 162, § 1, which provides for a lien on a vessel for charges and expenses incurred by a health officer with respect to the crew or passengers of such vessel, to be enforced "in the manner provided in the lien law for the enforcement of liens upon vessels," the filing of a notice by such officer in the county clerk's office as provided in such lien law is an essential condition precedent to a suit to enforce such lien.

[Ed. Note—For other cases, see Maritime Liens, Cent. Dig. §§ 49–52; Dec. Dig. ⊙⇒32.]

In Admiralty. Suit by Joseph J. O'Connell, as health officer, against the Greek steamship Athinai, to enforce a lien for official disbursements and expenses. Libel dismissed.

Final hearing in admiralty; libel asserting a lien upon the Athinai for the official disbursements and expenses of libelant, under the following circum-

stances: This Greek steamship arrived in New York Harbor from foreign parts on February 28, 1914. She carried numerous immigrant passengers. Libelant acting under authority of sundry statutes of New York, creating his office and defining its powers and duties, inspected the Athinai to discover whether there existed on board any quarantinable disease. He found several cases of meningitis, a malady either epidemic or contagious, and admittedly requiring preventive action by the quarantine authority, viz., himself. This inspection took place at the Quarantine Station on Staten Island. Libelant immediately ordered the passengers removed from the steamship, those actually ill to Swinburne Island, and the rest to Hoffman Island, both of which islands are in the lower harbor. Therefore the passengers had to retrace some miles of their voyage to get there.

This libel is filed in rem to recover the cost to the state of New York, at prices admittedly reasonable, for board, lodging, and hospital service to the afflicted or exposed passengers until such time as libelant considered it safe to hand them over to the immigration authorities at Ellis Island. The charge amounts to $4,551.50, and was first presented to the agent of the claimants on March 30, 1914. No effort was made to hold or seize the steamship itself until this libel was filed July 31, 1914. Release from seizure under the libel was obtained on usual stipulation. The libel sets forth the material part of the foregoing undisputed facts, and then alleges that for the sum of money above stated a lien exists "on said steamship" for the satisfaction of which prayer is made that the vessel be condemned and sold, in the common form.

The Attorney General of New York and Edgar Bromberger, Deputy Atty. Gen., for libelant.

Alvin C. Cass, of New York City, for claimant.

HOUGH, District Judge (after stating the facts as above). It is assumed, for purposes of decision, that quarantine regulations generally are within the powers of the several states, unless and until Congress, in the exercise of the commerce clause of the Constitution, chooses to assume control of that subject. Morgan v. Louisiana, 118 U. S. 455, 6 Sup. Ct. 1114, 30 L. Ed. 237.

[1] It is further considered beyond dispute that for services or expenditures such as shown here, the general maritime law provides no remedy or cause of action, enforceable in rem against the ship bringing into port passengers or others (not being members of the crew) either stricken with disease or exposed to infection. The duty, and therefore the liability, of any ship to the crew thereof need not be now inquired into. It follows that in order to justify this libel, support for the asserted lien must be found in some statute enacted by proper authority, and, further (if such statute be found) that the provisions thereof must be reasonably complied with, however beneficial may be the statute, and benevolent its interpretation.

Furthermore, any such legislation, creative of a lien enforceable in admiralty, and upon shipping, must rest upon the making or implication of a contract maritime in its nature, or on the commission of a maritime tort. Thus an act conferring a lien for the building of a vessel does not give admiralty jurisdiction, because of the nonmaritime nature of the contract therefor (Roach v. Chapman, 22 How. 129, 16 L. Ed. 294; Norton v. Switzer, 93 U. S. 355, 23 L. Ed. 903), while for death by wrongful act on shipboard a lien may be conferred because the tort by reason of the place of its committing is plainly mari-

time (The Corsair, 145 U. S. 355, 12 Sup. Ct. 949, 36 L. Ed. 727; The Onoko, 107 Fed. 984, 47 C. C. A. 111, and cases cited).

There is admittedly no statute of the United States affecting the matter at bar. The existence of a lien and jurisdiction to enforce it must ultimately depend upon the Public Health Law of New York (as amended in 1913), as it stood when the Athinai was quarantined.

Section 138 of this statute provides that charges such as now sued for "shall be a lien on the vessels * * * in relation to which they shall have been made"; also that if the owner or agent of the vessel (if the owner does not reside in the United States) does not pay the charges within three days after presentation of same, "the health officer [viz., this libelant] may proceed to enforce such lien in the manner provided in the Lien Law for the enforcement of liens upon vessels."

Section 139 specially provides for recovery of charges for care of passengers (as in this case) thus:

"The health officer may maintain an action against [the owners] to recover for such expenses, which shall be a lien upon the vessel, to be enforced as other liens thereon by him."

Section 103 also generally declares that payment of charges authorized by the statute may be enforced "by process of law against the vessel."

Much might be said as to the nature of the lien sought to be created by these not very well chosen words. There are other sentences of the statute which clearly authorize a physical detention of the ship, until payment made or security given. This is a merely possessory lien, with which (as such) admiralty has no concern.

It is also worthy of note that the act might be construed as merely creating a jus ad rem, such as is asserted by attachment both in admiralty and at common law. Of this it suffices to say that the speculation is not relevant, for by the very framework of this suit—by the nature of the process herein—there is asserted and must be substantiated that jus in re or lien in the nature thereof, without which no action in rem can be sustained.

The nature of a maritime lien is set forth notably by Fuller, C. J., in Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, and Field, J., in the Rock Island Bridge Case, 6 Wall. 215, 18 L. Ed. 753. Liens created by state statutes for necessaries are, in their nature, maritime, and are accepted in the American admiralty by the anomalous doctrine of The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345.

It may then be assumed (but not decided) that the Legislature of this state intended to create (at the best) a lien of the nature of a marine lien; i. e., jus in re. Unless that be the case, this libel must be dismissed because brought upon a false construction of the legislative intent.

On this necessary assumption, I do not find it obligatory or useful to discuss the nature of the services rendered or expenses incurred, whether maritime or not, nor to ascertain whether the lien rests upon

a tort by the ship, in bringing into the port infected passengers, nor whether penalties or taxes in support of quarantine regulations may be enforced as liens against vessels, all which matters have been most interestingly presented in briefs of counsel. There is no higher nor more beneficial lien known to marine law than that for necessaries and repairs, and I assume (but do not decide) that the services and expenses here shown rank with such well-known benefits to shipping.

[2] Libelant can ask no more than this; but having made all these concessions, it still remains true, and I think obviously so, that:

(1) It is beyond the power of any state to create a lien enforceable in the admiralty by process in rem against a foreign ship; and (2) if such was the intent of the Legislature, and if such purpose were constitutional, this libelant has not observed the method of procedure by which, and by which alone, he can enforce the lien thus created.

On the first point, The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770, is substantially conclusive. The reasoning of Brown, J., is inconsistent with any other conclusion. But see especially page 194 of 189 U. S., 23 Sup. Ct. 491, 47 L. Ed. 770, where it is noted that the right of a state to create liens for necessaries furnished to foreign vessels is, "in any case, open to grave doubt," citing The Chusan, 2 Story, 455, Fed. Cas. No. 2,717, and The Lyndhurst (D. C.) 48 Fed. 839. These opinions of Justice Story and Judge Addison Brown render superfluous any remarks of mine; unless ship's repairs are to be regarded as inferior in quality to and different in principle from board and hospital attendance for passengers. That such is not the case is, I think, obvious on statement of the proposition.

[3] As to the second point, it is fundamental that where a method of enforcing a right is given by statute, it must be adhered to, as a prerequisite to relief. This libelant has not filed the notice in the county clerk's office, provided for by the Lien Law of New York (Consol. Laws N. Y. c. 33, § 10), and this he is plainly required to do by the Health Law (ut supra). This was always held a prerequisite for enforcing the state lien for repairs, etc., as is well known to every practitioner familiar with proceedings prior to the passage of the Federal Lien Law. See The Catherine Whiting, 99 Fed. 445, 39 C. C. A. 592.

The libel is dismissed, but as there is lack of jurisdiction, there will be no costs.